**CATALINA MARKETING INTERNATIONAL, INC.,**
Plaintiff–Appellant,

v.

**COOLSAVINGS.COM, INC.,**
Defendant–Appellee.

No. 01–1324.

United States Court of Appeals,
Federal Circuit.

May 8, 2002.

Steven Z. Szczepanski, Jenkens & Gilchrist, of Chicago, IL, argued for plaintiff-appellant. With him on the brief were Mary Jo Boldingh, Russell J. Genet, and Michael K. Nutter.

Dean D. Niro, Niro, Scavone, Haller & Niro, of Chicago, IL, argued for defendant-appellee. With him on the brief were Thomas G. Scavone and Christopher J. Lee.

Before MAYER, Chief Judge, RADER, and PROST, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States District Court for the Northern District of Illinois held that Coolsavings.com, Inc. (Coolsavings) did not infringe, either literally or by equivalents, the claims of Catalina Marketing International, Inc.'s (Catalina's) U.S. Patent No. 4,674,041 (the '041 patent). *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, No. 00C 2447, slip op. at 6–7, 2001 WL 300235 (N.D.Ill. Mar.28, 2001). In the alternative, the district court applied prosecution history estoppel to bar Catalina from seeking equivalents on the location of the claimed terminals. *Id.* Because the district court erroneously relied on non-limiting language in the preamble of Claim 1 and misapplied prosecution history estoppel, this court affirms-in-part, reverses-in-part, vacates-in-part, and remands.

I.

The '041 patent, filed on September 15, 1983, claims a selection and distribution system for discount coupons. In a preferred embodiment, the system dispenses coupons to consumers at remote, kiosklike terminals connected to a central host computer system. When a consumer activates the terminal in a retail outlet, the terminal displays available coupons on the screen. The consumer selects a coupon and a printer connected to the terminal prints it. The terminal selectively communicates with the central computer system to acquire coupon information for display. When the number of dispensed coupons for a certain product reaches a limit specified by a coupon provider, the central computer system stops providing that particular coupon. Figure 3a depicts the terminal:

FIG. 3a

There are two independent claims at issue, namely Claims 1 and 25, which read as follows:

1. A systen [sic] for controlling the selection and dispensing of product coupons at a plurality of remote terminals *located at predesignated sites such as consumer stores* wherein each terminal comprises:

activation means for activating such terminal for consumer transactions;

display means operatively connected with said activation means for displaying a plurality of coupons available for selection;

selection means operatively connected with said display means provided to permit selection of a desired displayed coupon by the consumer;

print means operatively connected with said selection means for printing and dispensing the coupon selected by the consumer; and

control means operatively connected with said display means for monitoring each consumer transaction and for controlling said display means to prevent the display of coupons having exceeded prescribed coupon limits.

25. A system for controlling the selection and dispensing of product coupons at a plurality of remote terminals *located at predesignated sites such as consumer stores*, comprising:

a plurality of free standing coupon display terminals *located at predesignated sites such as consumer stores*, each of said terminals being adapted for bidirectional data communication with a host central processing unit;

each of said terminals comprising

activation means for activating such terminals for consumer use by insertion of a credit card or other card having customer account information stored on a magnetic strip;

display means operatively connected with said activation means for displaying a plurality of coupons;

selection means operatively connected with said display means for providing for the selection of a desired displayed coupon by a consumer;

print means operatively connected with said selection means for printing and dispensing the coupons selected;

terminal control means operatively connected with said display means and print means for continuously monitoring each customer transaction and for controlling said display and print means in response to prescribed coupon limits;

means for storing consumer transactions and for periodically communicating customer transactions to said host central processing unit;

said host central processing unit including means for the transmitting to each terminal particular information for each coupon; and

said host central processing unit further including means for periodically transmitting to each terminal coupon limits such as and including expiration date, and total number of coupons to be dispensed.

'041 patent, col. 30, ll. 46–65 and col. 32, l. 67—col. 33, l. 36 (emphases added).

During prosecution of the '041 patent, the examiner rejected all of the original claims as obvious in light of U.S. Patent No. 4,449,186 (the Kelley patent), which disclosed a terminal system for dispensing airline tickets. The examiner concluded that the only difference between the applicants' claimed invention and the Kelley patent was the location of the coupon terminal. In response, the applicants provided a general overview of the invention and amended the structural limitations of Claims 1 and 25 to distinguish the Kelley patent. The examiner again rejected all of the pending claims.

Responsive to the second rejection, the applicants again amended Claims 1 and 25, and submitted several declarations to bolster their assertion of nonobviousness. The applicants did not amend the claim language relating to the location of the terminals. Although stating that their invention involved terminals "located in stores" for the dispensing of coupons "onsite," the applicants also did not argue that the location of the terminals in stores distinguished the invention from the Kelley patent.

Coolsavings uses a web-based coupon system to monitor and control the distribution of coupons from its www.coolsavings.com website. After registering with the coolsavings.com website and providing demographic data, users can browse the website for available coupons. Users then select and print coupons for in-store redemption. Additionally, in some cases, users may access a coupon provider's website for on-line redemption of a coupon offer for on-line products. A centralized computer system stores coupon and user data. Users may access the Coolsavings

system from any Internet-accessible computer by simply logging onto the coolsavings.com website. Coolsavings received U.S. Patent No. 5,761,648 (the '648 patent) for its web-based coupon system. Catalina's '041 patent was cited during prosecution of the '648 patent.

Catalina sued Coolsavings, alleging that Coolsavings' web-based coupon system infringed the '041 patent. The district court construed the claim language "located at predesignated sites such as consumer stores," and held that Coolsavings did not infringe, either literally or by equivalents, the construed language. After determining that Coolsavings did not infringe under the doctrine of equivalents, the district court then alternatively held that prosecution history estoppel barred Catalina from seeking equivalents on the location of the terminals.

On appeal, Catalina argues that the disputed language, which appears only in the preamble of Claim 1, is not a limitation because it merely states an intended use for the claimed system. Alternatively, Catalina contends that the district court misconstrued the "located at predesignated sites such as consumer stores" claim language. In addition, Catalina asserts that prosecution history estoppel does not bar equivalents when the applicants did not amend the disputed language or argue patentability based on that language. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## II.

■ This court reviews a district court's grant of summary judgment without deference. *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1353, 47 USPQ2d 1705, 1713 (Fed.Cir.1998). Thus, this court must decide for itself "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In so doing, this court draws all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Before determining whether an accused device or process infringes, a court must first construe the claim language to determine the meaning and scope of the claims. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (*en banc*). Claim language defines claim scope. *SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed. Cir.1985) (*en banc*). Generally, claim language receives its plain, ordinary meaning as used in the relevant art. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed.Cir. 1999). When construing claim scope, courts may consult the specification, the prosecution history, and other relevant evidence. *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1169 (Fed.Cir.1999). Claim construction is a question of law, which this court reviews without deference. *Cybor Corp.*, 138 F.3d at 1456.

## A.

The district court's claim construction focused solely on the phrase "located at predesignated sites such as consumer stores." This phrase appears in the preamble of Claim 1, and in both the preamble and body of Claim 25. The district court construed this disputed phrase without discussion as to whether the

phrase, which appears only in the preamble of Claim 1, was indeed a limitation of Claim 1.

■ ] Whether to treat a preamble as a limitation is a determination "resolved only on review of the entire[ ] ... patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989); *see also Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1572–73, 40 USPQ2d 1481, 1488 (Fed.Cir.1996) ("Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.").

■ In general, a preamble limits the invention if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes,* 182 F.3d at 1305. Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror,* 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed.Cir. 1997).

■ No litmus test defines when a preamble limits claim scope. *Corning Glass,* 868 F.2d at 1257. Some guideposts, however, have emerged from various cases discussing the preamble's effect on claim scope. For example, this court has held that Jepson claiming generally indicates intent to use the preamble to define the claimed invention, thereby limiting claim scope. *Rowe,* 112 F.3d at 479; *Epcon Gas*

*Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1029, 61 USPQ2d 1470, 1475 (Fed.Cir.2002). Additionally, dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention. *Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620, 34 USPQ2d 1816, 1820 (Fed.Cir.1995) ("[W]hen the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects."). Likewise, when the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope. *Pitney Bowes,* 182 F.3d at 1306.

■ Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation. *Corning Glass,* 868 F.2d at 1257 (limiting claim scope to "optical waveguides" rather than all optical fibers in light of specification); *General Electric Co. v. Nintendo Co.,* 179 F.3d 1350, 1361–62, 50 USPQ2d 1910, 1918–19 (Fed.Cir.1999) (limiting claim scope to a "raster scanned display device" rather than all display systems in view of specification's focus on the prior art problem of displaying binary data on a raster scan display device); *Rowe,* 112 F.3d at 479–80; *Applied Materials,* 98 F.3d at 1573.

■ Moreover, clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention. *See generally Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1375, 58 USPQ2d

1508, 1513 (Fed.Cir.2001) (A preamble may limit when employed to distinguish a new use of a prior art apparatus or process.). Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434, 54 USPQ2d 1129, 1136–37 (Fed.Cir.2000) (preamble phrase "control apparatus" does not limit claim scope where it merely gives a name to the structurally complete invention). Thus, preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant. *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (Fed.Cir.2000) (preamble stating that invention provides "improved playing and handling characteristics" is not a limitation); *Bristol–Myers*, 246 F.3d at 1375 (steps of claimed method are performed the same way regardless of whether, as stated in the preamble, a reduction of hematologic toxicity occurs).

▬▬▬ Moreover, preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure. *In re Gardiner*, 36 C.C.P.A. 748, 171 F.2d 313, 315–16, 80 USPQ 99, 101 (1948) ("It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof."). Indeed, "[t]he inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." *Roberts v. Ryer*, 91 U.S. 150, 157, 23 L.Ed. 267 (1875). More specifically, this means that

a patent grants the right to exclude others from making, using, selling, offering to sale, or importing the claimed apparatus or composition for any use of that apparatus or composition, whether or not the patentee envisioned such use. *See* 35 U.S.C. § 271 (1994). Again, statements of intended use or asserted benefits in the preamble may, in rare instances, limit apparatus claims, but only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art. Likewise, this principle does not mean that apparatus claims necessarily prevent a subsequent inventor from obtaining a patent on a new method of using the apparatus where that new method is useful and nonobvious.

Perhaps a hypothetical best illustrates these principles: Inventor A invents a shoe polish for shining shoes (which, for the sake of example, is novel, useful, and nonobvious). Inventor A receives a patent having composition claims for shoe polish. Indeed, the preamble of these hypothetical claims recites "a composition for polishing shoes." Clearly, Inventor B could not later secure a patent with composition claims on the same composition because it would not be novel. *See In re Schreiber*, 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed.Cir.1997). Likewise, Inventor B could not secure claims on the method of using the composition for shining shoes because the use is not a "new use" of the composition but, rather, the same use shining shoes. *See Bristol–Myers*, 246 F.3d at 1375; *In re King*, 801 F.2d 1324, 1327, 231 USPQ 136, 138 (Fed.Cir.1986).

Suppose Inventor B discovers that the polish also repels water when rubbed onto shoes. Inventor B could not likely claim a method of using the polish to repel water on shoes because repelling water is inherent in the normal use of the polish to shine shoes. *Id.* at 1326 (" '[I]f a previously patented device, in its normal and usual

operation, will perform the function [claimed] in a subsequent [ ] process patent, then such [ ] process patent [is] ... anticipated by the former patented device.'") (quoting *In re Ackenbach,* 18 C.C.P.A. 769, 45 F.2d 437, 439, 7 USPQ 268, 270 (CCPA 1930)); *see also Bristol– Myers,* 246 F.3d at 1375. In other words, Inventor B has not invented a "new" use by rubbing polish on shoes to repel water. Upon discovering, however, that the polish composition grows hair when rubbed on bare human skin, Inventor B can likely obtain method claims directed to the new use of the composition to grow hair. *See* 35 U.S.C. § 101 (1994) ("Whoever invents or discovers any new and useful process ... may obtain a patent therefor."); 35 U.S.C. § 100(b) (1994) ("The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."). Hence, while Inventor B may obtain a blocking patent on the use of Inventor A's composition to grow hair, this method patent does not bestow on Inventor B any right with respect to the patented composition. Even though Inventor A's claim recites "a composition for polishing shoes," Inventor B cannot invoke this use limitation to limit Inventor A's composition claim because that preamble phrase states a use or purpose of the composition and does not impose a limit on Inventor A's claim.

■■■ In this case, the claims, specification, and prosecution history of the '041 patent demonstrate that the preamble phrase "located at predesignated sites such as consumer stores" is not a limitation of Claim 1. The applicant did not rely on this phrase to define its invention nor is the phrase essential to understand limitations or terms in the claim body. Although the specification refers to terminals located at points of sale, and even once states that terminals may be placed in retail stores, the specification, in its entirety, does not make the location of the terminals an additional structure for the claimed terminals. *See* '041 patent, col. 1, l. 67— col. 2, l. 37 and col. 4, ll. 65–67.

The applicants also did not rely on the preamble phrase to distinguish over the Kelly patent. Rather, the examiner expressly rejected the claims on the basis that the location of the terminals in stores was not patentably significant. In response, the applicants amended structural limitations in the claim body to distinguish the Kelly patent. Thus, while the applicants stated during prosecution that their invention involved terminals "located in stores" for the dispensing of coupons "on-site," such statements, without more, do not indicate a clear reliance on the preamble to distinguish the prior art, especially where the examiner's initial rejection considered terminal location insignificant for patentability.

Moreover, deletion of the disputed phrase from the preamble of Claim 1 does not affect the structural definition or operation of the terminal itself. The claim body defines a structurally complete invention. The location of the terminals in stores merely gives an intended use for the claimed terminals. As already noted, the applicants did not rely on this intended use to distinguish their invention over the prior art.

In this case, the disputed preamble language does not limit Claim 1—an apparatus claim. To hold otherwise would effectively impose a method limitation on an apparatus claim without justification. Accordingly, this court holds that the district court erroneously treated the preamble as a limitation of Claim 1.

## B.

■■■ While the phrase "located at predesignated sites , such as consumer

stores" appears only in the preamble of Claim 1, this language appears in both the preamble and body of Claim 25. Hence, the applicants specifically included this language in the claim not once, but twice. By virtue of its inclusion in the body of Claim 25, this phrase limits Claim 25. This court, therefore, must determine whether the district court's construction of the disputed phrase is correct as a matter of law.

In interpreting this language, the district court found that "predesignate" means "to designate beforehand," and that "site" means "the original or fixed position of a thing." Accordingly, the district court held that the ordinary meaning of "predesignated site" is "to designate beforehand the original or fixed position of a thing." The district court found that the term "such as" means "of a kind or character about to be indicated, suggested, or exemplified; for instance." The district court then considered whether the phrase "such as a consumer store" means that the terminals may be located anywhere or only "at the point of sale." The district court concluded that the terminals had "to be placed at a predesignated site at the point of sale, i.e., a consumer store."

Although agreeing with the dictionary definition of "predesignated site," Catalina argues that the predesignation of sites refers to "the connecting of and accepting of the terminal by the host computer." According to Mr. Wicker, Catalina's expert, "predesignated sites" "indicates that certain sites have been designated, and [ ] that they have been designated at a point in time prior to ... 'the selection and dispensing of product coupons.'" Catalina further contends that the district court erred by equating "point of sale" with "consumer store." According to Catalina, the genus indicated by the species "consumer stores" is a "point of sale" location.

The district court correctly held that the ordinary meaning of "predesignated site" is "to designate beforehand the original or fixed position of a thing." Thus, the claim requires designation of a terminal site before location of a terminal at that site. Catalina's argument that "predesignated sites" refers to the recognition of a terminal by a host computer at some point before coupon selection ignores the physical dimension indicated by the phrase "located at" immediately preceding "predesignated sites." Recognition simply does not amount to predesignation. Thus, a coupon dispensing entity must designate a location for a terminal before placing it at that site. This claim language limits the scope of the claims.

The district court correctly found that the term "such as" means "of a kind or character about to be indicated, suggested, or exemplified; for instance." Despite correctly characterizing "such as" as exemplary language, the district court erroneously equated "point of sale" with "consumer store." "Such as" introduces an example of a broader genus rather than limiting the genus to the exemplary species. Moreover, the specification of the '041 patent uses the phrase "such as consumer stores" as an example of a possible point of sale location. *See, e.g.,* '041 patent, col. 1, l. 67—col. 2, l. 4, col. 2, ll. 32–38, and col. 4, ll. 65–67. As discussed above, the applicants stated during prosecution that their invention involved terminals "located in stores" for the dispensing of coupons "on-site." This descriptive language during the acquisition of the patent does not make the store location more than an example of a point of sale location.

This court thus holds that the phrase "located at predesignated sites such as consumer stores" requires designation of the physical site of the terminal before

location of the terminal at a point of sale location.

## III.

After claim construction, the fact finder compares the properly construed claims to the accused device or process. *Cybor Corp.*, 138 F.3d at 1454. To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents. *Seal Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842, 50 USPQ2d 1225, 1228 (Fed.Cir.1999). Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim. *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1014–15 (Fed.Cir.1998). Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied. *Dawn Equip. Co. v. Kentucky Farms*, 140 F.3d 1009, 1015, 46 USPQ2d 1109, 1113 (Fed.Cir.1998).

A determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998). Summary judgment of no literal infringement is proper when, construing the facts in a manner most favorable to the nonmovant, no reasonable jury could find that the accused system meets every limitation recited in the properly construed claims. *Bai*, 160 F.3d at 1353.

## A.

Based on its construction of the phrase "located at predesignated sites such as consumer stores," the district court held that Coolsavings' system did not literally infringe Claims 1 or 25 of the '041 patent. Because this phrase does not limit Claim 1 and the district court did not further construe Claim 1, this court vacates the judgment of no literal infringement of Claim 1 and remands for claim construction and appropriate infringement proceedings. With respect to Claim 25, this court construed the phrase "located at predesignated sites such as consumer stores" to require that the physical position of the terminal be designated before placement of the terminal at a point of sale location. For Coolsavings to be liable for literal infringement Coolsavings' accused system must designate the physical position of the terminals before location of the terminals at a point of sale. Coolsavings' system, however, does not designate (or even recognize) the physical position of computers connecting to its website; thus, Coolsavings' system does not literally satisfy this limitation of Claim 25. Under the proper claim construction, this court therefore affirms the district court's holding that Coolsavings' system does not literally infringe Claim 25 of the '041 patent. Because this holding is dispositive on literal infringement, this court need not opine on Catalina's argument that an Internet-accessible home computer constitutes a point of sale location.

## B.

"An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor Corp.*, 138 F.3d at 1459. An element in the accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040,

137 L.Ed.2d 146 (1997). Insubstantiality may be determined by whether the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the claim limitation. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

Because the district court only construed a non-limiting preamble phrase and has not further construed the limitations of Claim 1, this court vacates and remands for further proceedings concerning infringement under the doctrine of equivalents on Claim 1. The record evidence does not sufficiently inform as to whether Coolsavings' system varies insubstantially from Claim 25's requirement of terminals "located at predesignated sites such as consumer stores." In other words, the doctrine of equivalents requires a factual assessment of whether Coolsavings' system, which of necessity determines an Internet address for computers accessing its website, is insubstantially different from the placement of terminals at predesignated points of sale. This court, therefore, vacates and remands the question of infringement under the doctrine of equivalents on Claim 25.

## IV.

Prosecution history estoppel prevents the doctrine of equivalents from recapturing subject matter surrendered during prosecution. *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458, 46 USPQ2d 1321, 1327 (Fed.Cir.1998). The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter. *Cybor Corp.*, 138 F.3d at 1457. The applicability of prosecution history estoppel is a legal question, which this court reviews without deference. *Id.* at 1460.

The district court concluded that prosecution history estoppel barred Catalina from seeking equivalents for the "located at predesignated sites such as consumer stores" limitation. While its analysis is somewhat unclear, the district court appears to base its conclusion on the applicants' statements during prosecution that their invention involved terminals "located in stores" for the dispensing of coupons "on-site."

As discussed above, the applicants did not amend this language regarding the location of the terminals. In addition, the applicants did not argue that the location of terminals would distinguish the invention from the prior art. Undeniably, such an argument would have failed given the examiner's express statement that terminal location was not significant to the patentability inquiry. In sum, the applicant did not, clearly or otherwise, surrender subject matter by making allusions to terminal location. This court, therefore, reverses the district court's holding that prosecution history estoppel bars Catalina from seeking equivalents on this missing limitation of Claim 25.

## CONCLUSION

Because the district court erroneously relied on non-limiting language in the preamble of Claim 1, this court vacates the district court's judgment of non-infringement of Claim 1, both literally and by equivalents, to give the district court the opportunity to construe the limitations of Claim 1. Although the district court erred in its construction of Claim 25, because the accused system does not infringe literally Claim 25, as properly construed, this court affirms the holding of no literal infringement of Claim 25. This court vacates and remands the holding of no infringement of Claim 25 by equivalents because the trial court should have an opportunity to devel-

op and assess the record under the proper claim construction. Finally, because the district court erred in determining that prosecution history estoppel bars equivalents on the terminal location, this court reverses that holding.

## COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED IN PART, VACATED–IN–PART, and REMANDED.*