NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

03-1548, -1627

CATALINA MARKETING INTERNATIONAL, INC.,

Plaintiff-Appellant,

v.

COOLSAVINGS.COM, INC. and COOLSAVINGS, INC.,

Defendants-Appellees,

and

LANDMARK COMMUNICATIONS, INC.
and LANDMARK VENTURES VII, LLC,

Defendants-Appellees.

_____

DECIDED: November 19, 2004
_____

Before MICHEL, RADER, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Catalina Marketing International, Inc. ("Catalina") owns Patent No. 4,674,041 ("the '041 patent") entitled "Method and Apparatus for Controlling the Distribution of Coupons." The Catalina device was intended to oversee the distribution of coupons from electronic terminals at the point of sale. Coolsavings.com, Inc. ("Coolsavings") runs an Internet web site that uses inputted user demographic information to target coupon offers for various products to potential customers.

Catalina sued Coolsavings in the District Court for the Northern District of Illinois for infringement of claim 1 of the '041 patent. The district court conducted a Markman hearing and construed key claim terms. After the district court's claim construction order was issued, Catalina conceded that it could not prove infringement given the district court's claim construction and stipulated to a dismissal of its infringement complaint.

Catalina now appeals the dismissal, challenging the district court's claim construction ruling to this court. Because we find no error in the district court's claim construction, we affirm.

BACKGROUND

Claim 1 of the '041 patent recites a coupon-dispensing terminal that comprises, among other things:

> activation means for activating [the] terminal for consumer transactions
> . . . .
> display means operatively connected with said activation means for displaying a plurality of coupons available for selection
> . . . .
> selection means operatively connected with [a] display means provided to permit selection of a desired displayed coupon by the consumer
> . . . .
> print means operatively connected with [the] selection means
> . . . .
> control means operatively connected with [a] display means . . . for controlling [the] display means to prevent the display of coupons having exceeded prescribed coupon limits.

'041 patent col. 30, ll. 50-65 (claim terms at issue underlined).

Coolsavings runs an Internet web site that seeks to target product promotions to users of its site by using demographic data provided by the users. Coolsavings.com users access the web site through personal computer terminals. Once users choose the offers that appeal most to them, they are invited to print coupons from their local computer printers.

In 1999, Catalina brought suit against Coolsavings for infringement of the '041 patent. In 2001, the district court granted summary judgment to Coolsavings, finding noninfringement on the grounds that parts of the preambles to claim 1 and claim 25 were claim limitations. Catalina appealed that judgment to this court, which affirmed in part, reversed in part, vacated in part and remanded the case for further proceedings. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801 (Fed. Cir. 2002) ("Catalina I").

In our 2002 opinion, we held that the preamble phrase "located at predesignated sites such as consumer stores" was not a claim limitation of claim 1 of the '041 patent.[1] Id. at 810. Accordingly, we vacated the district court's noninfringement judgment based on its then erroneous construction of claim 1 and remanded the case for further proceedings. Id. at 813-14.

Following our remand, the district court held another Markman hearing. On remand, Catalina continued to press its claim that Coolsavings infringed claim 1 of the '041 patent. In addition, Catalina also joined Landmark Communications, Inc. and Landmark Ventures VII, Inc. (collectively referred to as "Landmark") as co-defendants

---

[1] We also noted, however, that since that term was used in both the preamble and the body of claim 25, it was a limitation on claim 25. Id. at 811.

based on a theory of alter ego liability. In its June 25, 2003 claim construction order, the district court determined that another term in the preamble to claim 1 was not a limitation on the claim and also construed the claim terms "activation means," "selection means," "operatively connected," and "prescribed coupon limits." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., No. 00 C 2447, slip op. at 7-21 (N.D. Ill. June 25, 2003) ("District Court Opinion"). In addition, on July 2, 2003, the district court granted Landmark's 12(b)(2) motion to dismiss for lack of personal jurisdiction. District Court Opinion at 11.

After Catalina conceded that it could not prove infringement of claim 1 of the '041 patent based on the district court's claim construction, the district court accepted the stipulated dismissal of the case agreed to by Catalina, Coolsavings, and Landmark.

Catalina now appeals. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(1).

DISCUSSION

The district court's claim construction of "activation means," "selection means," "prescribed coupon limits," and "operatively connected" are at issue in this case. Also at issue is the district court's determination that the preamble to claim 1 is not a limitation of claim 1. If the district court's claim construction is affirmed, then, pursuant to Catalina's stipulation, Coolsavings cannot be infringing the '041 patent. If Coolsavings does not infringe the '041 patent, then the jurisdictional arguments raised by Catalina in regards to Landmark become moot as Catalina has only alleged a derivative (and not an independent) theory of liability in regards to Landmark.

Claim construction is an issue of law that is reviewed de novo. Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Determining whether a preamble constitutes a limitation is a matter of claim construction that is likewise reviewed de novo. See, e.g., Catalina I, 289 F.3d at 807-10.

A. "Activation means"

The district court construed the term "activation means for activating such terminal for consumer transactions" as a means-plus-function term under 35 U.S.C. § 112, ¶ 6 and found that the function of the term is "activating the terminal for consumer transactions." District Court Opinion at 8. The court then examined the '041 patent specification and identified the corresponding structure to be a magnetic card reader. Id. at 10.

While not disputing the district court's determination of the limitation's function, Catalina argues that the corresponding structure for the "activation means" limitation should be the "asynchronous receiver/transmitter (UART)" which sends the interrupt signal which activates the disclosed invention for consumer transactions. See '041 patent col. 7, ll. 42-54. Catalina asserts that the '041 patent identifies an activator that contains three major components—a "card reading apparatus," a "conventional card reader interface," and the UART. It argues that only the UART should be considered corresponding structure to the "activation means" term because only the UART sends the interrupt signal that activates its disclosed device.

We disagree with Catalina and agree with the district court that the corresponding structure to the "activation means" is a magnetic card reader. The specification contains numerous references to a magnetic card reader in connection

with the "activation means" limitation.  See '041 patent col. 5, ll. 38-58; col. 7, ll. 42-49. It is clear in the specification that what "activates" the disclosed terminal for consumer transactions is "activator A."  Id. at col. 5, l. 43.  Furthermore, as the specification notes, "Activator A is a conventional magnetic card reading apparatus."  Id. at col. 5, ll. 45-46. Finally, neither the specification nor the prosecution history identifies any other structure as the "activation means" for the terminal disclosed in claim 1 of the '041 patent.  It is therefore clear from the specification that the structure corresponding to the "activation means" is a magnetic card reader.

Accordingly, we uphold the district court's construction of the "activation means" limitation found in claim 1 of the '041 patent.

### B.  "Selection means"

The district court determined that the function of the "selection means operatively connected with said display means provided to permit selection of a desired displayed coupon by the consumer" limitation was "to permit selection of a desired displayed coupon by the consumer."  District Court Opinion at 13.  Relying on the specification and the prosecution history, the court then determined that the corresponding structure to the "selection means" limitation is a touch screen.  Id. at 14.

On appeal, Catalina argues that the district court improperly altered the claim term "to permit selection" to "permitting the consumer to make a selection" and maintains that this change led the district court to incorrectly identify a touch screen as the "selection means" limitation's corresponding structure.  Catalina urges this court to identify the UART, which sends the interrupt signal to the microprocessor, as the

"selection means."  We agree with the district court and find Catalina's argument unpersuasive.

The claim limitation itself states that the "selection means" is intended "to permit selection of a desired displayed coupon <u>by the consumer</u>."  '041 patent col. 30, ll. 55-57 (emphasis added).  Therefore, contrary to Catalina's assertion, the district court did not "alter" anything in its claim construction.  Furthermore, as was the case for "activation means," the corresponding structure for the "selection means" limitation is the entire structure that permits selection of a coupon—and not the minute substructure that enables the last step involved with selection of a coupon.

Moreover, the only structure that corresponds to the selection means in the specification is a touch screen.  As the specification itself states:

> <u>Coupons are displayed for customer selection at each dispensing terminal on a video menu via a cathode ray tube and touch screen combination</u> in a fashion which enhances customer acceptance by reducing the time necessary to select and obtain coupons.

'041 patent col. 2, ll. 8-12 (emphasis added).  The preferred embodiment likewise identifies a touch screen in discussing the means by which customers can select the coupons that interest them.  For example:

> Customer interface display I includes a conventional cathode ray tube 28 for displaying the video menu of coupons available for selection as well as other video graphics, such as advertisements, in response to signals received from microcomputer 22. <u>Overlaying cathode ray tube 28 is a transparent, touch sensitive screen 30 which includes an array of touch activated switches arranged in a regular array to overlay particular coupons displayed on cathode ray tube 28.</u> In the preferred embodiment, a screen having an array of thirty-two (32) switches such as the Model Number TK120S manufactured by Interaction Systems, Inc. is used. Other

> commonly available and suitable touch sensitive screens may also be employed.

'041 patent col. 5, ll. 8-21 (emphasis added). No structure other than a "touch screen" or "touch sensitive screen" is identified as a selection means in the specification. And no other structure allows for the "selection" of coupons.

Accordingly, the district court's claim construction of the "selection means" limitation is upheld.

### C. "Prescribed coupon limits"

The district court construed "prescribed coupon limits" as being "predetermined limits on the number of coupons collectively and per store." District Court Opinion at 20. On appeal, Catalina argues that the district court's construction is too limiting. Instead, it argues that "prescribed coupon limits" should have been construed as the "designated maximum quantity or number" of coupons. Catalina's argument, however, is refuted by the prosecution history of the '041 patent.

During the course of prosecuting the '041 patent, the named inventors amended the term "prescribed coupon criteria" in their original patent application to "prescribed coupon limits." Going further, they stated that, according to the specification, the term "prescribed coupon criteria" was "exemplified by the per store limits, the per day limits and the per customer limits as indicated." District Court Opinion at 20. In explaining their amendment to claim 1, they stated that, "Claim 1 has been amended and the phrase 'prescribed coupon criteria' has been replaced by 'prescribed coupon limits' which may more effectively communicate the same idea." Id. What the inventors represented to the patent examiner at the time of prosecution Catalina cannot now retract.

Accordingly, the district court's construction of "prescribed coupon limits" is upheld.


### D. "Operatively connected"

The district court construed the claim term "operatively connected" to mean "joined or linked together to produce the designed effect." District Court Opinion at 20. The court also held that the "operatively connected" limitation, when read in light of the '041 patent specification, should be construed to mean "joined or linked together to produce the designed effect within the terminal." Id. at 21 (emphasis added).

Catalina challenges this construction, arguing that the district court improperly imported "within the terminal" into the "operatively connected" limitation. Catalina argues that the plain and ordinary meaning of the "operatively connected" limitation is not restricted to operative connections only within the coupon-dispensing terminal. We are not persuaded by Catalina's argument on appeal.

The language of claim 1 itself describes "[a] syste[m] . . . wherein each terminal comprises" the device recited by the claim 1 limitations. '041 patent col. 30, ll. 46-49 (emphasis added). It is within those limitations that the "operatively connected" term is used. Furthermore, the patent specification itself often refers to the disclosed invention as a "stand alone coupon dispensing terminal." See, e.g., '041 patent col. 2, ll. 5-7. Clearly, the language of the claims and the intrinsic evidence supports the district court's construction of the "operatively connected" term in claim 1.

Accordingly, the district court's construction of "operatively connected" is upheld.

E.  Preamble to claim 1

The district court held that certain preamble language in claim 1 is not a limitation of claim 1.  District Court Opinion at 7.  Specifically, it found the preamble language "[a] syste[m] for controlling the selection and dispensing of product coupons at a plurality of remote terminals" to be unnecessary to the understanding of the terms or limitations in the body of claim 1.  Id.

Catalina challenges the district court's ruling on this issue, arguing that the preamble phrase is a limitation because it is crucial to understanding what it is the '041 patent inventors invented.  Specifically, Catalina urges that the preamble be construed as a limitation requiring "controlling the selection and dispensing of product coupons at a plurality of remote terminals."  Furthermore, it asks this court to find the corresponding structure to be a host central processing unit, a modem, and a plurality of remote terminals.

A claim's preamble can be considered a claim limitation when it is "necessary to give life, meaning and vitality" to the claim.  Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999).  On the other hand, if the preamble "offers no distinct definition of any of the claimed invention's limitations, but rather merely states . . . the purpose or intended use of the invention," then the preamble cannot be read as a limitation on a claim.  Id.  As we stated in our previous decision in this case:

> [A] preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim.  Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.

Catalina I, 289 F.3d at 808 (internal quotations and citations omitted).

Reading the preamble to claim 1, it is clear it is intended to summarize the invention and its purpose and not to give any information that is indispensable to understanding the invention recited by claim 1. Specifically, the preamble does not offer any details, structure or description that would aid one of skill in the art in understanding what is being covered by the limitations of claim 1. Therefore, we find that the preamble language in claim 1 of the '041 patent is not a limitation of claim 1. Consequently, the district court's determination that the claim 1 preamble phrase "A syste[m] for controlling the selection and dispensing of product coupons at a plurality of remote terminals" is not a limitation on claim 1 is upheld.

## F. Jurisdiction

In its stipulation to a dismissal before the district court, Catalina itself conceded that if the district court's claim construction were upheld, Coolsavings' accused device could not be infringing the '041 patent. Since Landmark's liability is only derivative of the liability of Coolsavings, Landmark cannot now be liable to Catalina for infringement of the '041 patent under any theory of liability advanced by Catalina. Therefore, Catalina's jurisdictional arguments regarding Landmark are moot.[2]

## CONCLUSION

For the aforementioned reasons, the district court's decision is affirmed.

---

[2] In addition, we deny Landmark's Rule 38 motion for the imposition of sanctions against Catalina.