MOORE, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s decision to affirm the district court’s judgment of noninfringement. Because the district court erred in its claim construction, I would reverse and remand.
I. Is “bit,” used only in the preamble, a structural limitation?
I disagree with the majority that “bit” limits the claims of U.S. Patent No. 6,371,567 (’567 patent). It is correct that the terms “bit holder” and “bit block,” which first appear in the preamble of the '567 patent, are claim limitations. The body of the claim itself expressly recites these structures. However, the fact that one structure recited in the preamble is a limitation by virtue of providing antecedent basis for a later reference does not convert the entire preamble into a limitation. The bit is a structure distinct from the bit holder or bit block. The bit itself appears only in the preamble in a statement of intended use. It does not appear in the body of any claim in the patent. And the invention claimed in the '567 patent is structurally complete without the bit. Claim 1 is to a bit holder, and the elements in the body of the claim define the structure of the bit holder and the manner in which the bit holder interacts with the bit block. But claim 1 does not require the presence of a bit. It never mentions the bit itself or even delineates how the bit fits into the claimed bit holder. There is no doubt that the bit is part of the assembly disclosed in the '567 patent for use in road milling, trenching, and mining. Neither the assembly nor the bit, however, is claimed in the '567 patent. The patentee directed the '567 patent claims solely to the bit holder and its interaction with the bit block.
I find nothing in the specification to indicate that the bit is necessary to give life, meaning, and vitality to the claimed bit holder and block. See Catalina Mktg. Int’l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed.Cir.2002). The title of the '567 patent is “Bit Holders and Bit Blocks,” not “bits.” '567 patent, at [54]. *1026 The abstract discusses “[a]n improved bit holder with its mating bit block,” but again does not mention a “bit” as a separate structural entity. Id. at [57]. Finally, the face of the '567 patent displays Figures 3 and 9, which do not depict a bit. The specification describes Figures 3-8 as “a second embodiment of the bit holder and bit block constructed in accordance with the present invention,” id. col. 4 ll. 11-13, and Figures 9-10 as “a third embodiment of the bit holder of the present invention,” id. col. 5 ll. 56-57. Although Figures 1 and 2, which presumably refer to the first embodiment, depict bits, the bits are not described as a part of the “present invention.” I thus conclude the word “bit,” used only in the preamble, is not a limitation of the '567 patent claims. Because the district court’s decision that the '567 patent is not infringed was based on its erroneous conclusion that “bit” is a claim limitation, I would reverse its grant of summary judgment of noninfringement as to the '567 patent.
With regard to U.S. Patent No. 7,883,-155 (’155 patent), I agree with the majority that the preamble term “bit” limits the scope of the claims, but not for the reasons that the majority provides. The '155 patent, in contrast to the '567 patent, is directed not to bit holders and blocks that are a “part of an assembly,” but rather to the “assemblies” or “bit assemblies” themselves. See '155 patent, at [54], [57]; claims 1-4; cf. '567 patent claim 1 (emphasis added). I read the “assembly” in the preamble of claim 1 of the '155 patent as a claim limitation that delineates the structural elements of the claim. Each dependent claim of the '155 patent expressly recites “[t]he assembly as defined in claim 1....” '155 patent claims 2-4. Were the word “assembly” not a limitation of claim 1, the claims that depend from it would lack a proper antecedent basis for the “[t]he assembly as defined in claim 1.” See, e.g., Rapoport v. Dement, 254 F.3d 1053, 1059 (Fed.Cir.2001). Moreover, the dependent claims of the '155 patent expressly add a further limitation to “the assembly,” not to the bit holder (as the '567 patent does).
The specification confirms this conclusion. It indicates that the assembly is the present invention. See '155 patent col. 4 ll. 64-65 (“the assembly 15 of the present invention”); col. 5 1. 3 (“the bit assembly of the invention”); col. 2 ll. 59-61 (“Referring to FIG. 1, a bit, bit holder and bit block assembly, generally indicated at 15, constructed in accordance with the present invention, includes a bit ... ”). I would thus conclude that the “assembly” recited in the preamble is a limitation of the '155 patent claims. And claim 1 expressly defines the assembly as “including a bit, bit holder, and bit block.” For these reasons, I conclude that bit is a structural limitation of the claims of the '155 patent.
II. What is the propeR construction of “bit”?
Although I agree that the term “bit” in the preamble of claim 1 of the '155 patent is a limitation, I would still reverse the grant of summary judgment of nonin-fringement with respect to this patent. The district court’s construction of “bit” is in error. The district court, and now the majority, improperly read three limitations into the bit — that the bit is removable, that the bit includes a shank that is cylindrical, and that the bit is mounted in a cylindrical bore.
A. “Removable” bit
The plain and ordinary meaning of “bit” does not require removability. A “bit” is simply an object comprising a tip and a shank. That is the plain meaning and the definition expressly given by the patentee. *1027 See '155 patent col. 1 1. 27 (“The bits utilized include a tip and a shank.”). A bit can be brazed onto its holder. See Maj. Op. at 1028-24. This lack of removability makes it no less a bit.
We only deviate from the plain and ordinary meaning in instances of lexicography or disavowal. Thorner v. Sony Computer Entm’t Am. LLC, 669 F.3d 1362, 1365 (Fed.Cir.2012). The majority points to the same definition discussed above: “[t] he bits utilized include a tip and a shank.” See Maj. Op. at 1017. There is not, nor does the majority point to, any other lexicography on this term. The majority concludes that the claimed bits ought to be limited to removable bits because “[t]he removability requirement is fully supported by the specification.” Id. at 1018. With all due respect, that is not the standard we apply. If it were, every limitation in the preferred embodiments would be read into the claims.
There have been cases from this court that conclude that a claim is limited by a statement in the specification when the patentee has indicated clearly and unmistakably that he intended to so limit his claims — i.e., disclaimer cases. For example, we found disclaimer when the specification indicated that for “successful manufacture” a particular step was “require[d].” Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1367 (Fed.Cir.2007) (“Those statements are not descriptions of particular embodiments, but are characterizations directed to the invention as a whole.”). We found disclaimer when the specification indicated that the invention operated by “pushing (as opposed to pulling) forces,” and then characterized the “pushing forces” as “an important feature of the present invention.” SafeTCare Mfg., Inc. v. Tele-Made, Inc., 497 F.3d 1262, 1269-70 (Fed.Cir.2007). We found disclaimer when the patent repeatedly disparaged an embodiment as “antiquated,” having “inherent inadequacies,” and then went on to detail the “deficiencies [that] make it difficult” to use. Chicago Bd. Options Exch., Inc. v. Int’l Sec Exch., LLC, 677 F.3d 1361, 1372 (Fed.Cir.2012) (“[T]he specification goes well beyond expressing the pat-entee’s preference ... and its repeated derogatory statements about [a particular embodiment] reasonably may be viewed as a disavowal.”). We have also held that disclaimer applies when the patentee makes statements such as “the present invention includes ...” or “the present invention is ...” or “all embodiments of the present invention are.... ” See Regents of Univ. of Minn. v. AGA Med. Corp., 717 F.3d 929, 936 (Fed.Cir.2013); Honeywell Int’l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1316-19 (Fed.Cir.2006); SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed.Cir.2001). There is no such disclaimer here.
Nowhere does the '155 patent describe removability of the bit as a feature of the “present invention” or a feature “essential” to the invention. In fact, the '155 patent is almost completely devoid of any statement about removability of the bit. The Background of the Invention section discusses four objects of the present invention: (1) improved means for removing a bit holder from its bit block; (2) a more efficient assembly that requires less power; (3) providing multiple means for retaining a bit holder in a bit block; and (4) providing a tool that allows easy removal of the bit holder from the bit block. See '155 patent col. 2 11. 1-20. To the extent that removability is discussed at all, it is the removability of the bit holder from the bit block, not the removability of the bit from its bit holder. There are only two mentions of removability of the bit from the bit holder in the entire patent. The first is where the patent discusses, not the *1028 present invention, but rather a single piece of prior art: “U.S. Patent 5,374,111 discloses [a tool] ... to help remove a bit from the bit block. It would be desirable to provide a more efficient means and multiple means for allowing the removal of a bit holder from the bit block.” Id. col. 111. 56-61. Clearly, this statement does not limit the claimed invention to removable bits. It explains that the present invention focuses on removal of bit holders from bit blocks. The only other mention of removability of a bit is in the third discussed embodiment: “Referring to Figures 7, 8, and 9, a third embodiment of a bit holder is shown.... [The bit holder] includes a pair of notches 74, 75 therein that provide tool access to the back of a bit for easing removal of the bit from the bit holder.” Id. col. 5 11. 40-48. The fact that the design of the bit holder in this one embodiment facilitates removal does not morph removability into a requirement. Additionally, there are five embodiments in the patent, and none of the others require, show, or even mention removability of the bit. The majority’s claim that every relevant embodiment disclosed refers to the removability of the bit from the bit holder is inaccurate.
To be sure, removability of the bit holder from the bit block is an important aspect of the present invention and is mentioned more than a dozen times in the patent. But this is entirely different from remova-bility of the bit from the bit holder, which is mentioned only once in conjunction with one of five embodiments. The fact that my watch must be removable from my arm doesn’t mean the hands on the watch need to be removable from the watch. There is nothing in this patent which suggests that removability of the bit is important, much less a critical or essential part of the claimed invention.
Finally, to the extent that the majority finds disclaimer in the prosecution history, I do not agree. None of the multiple office actions or responses ever discusses removable bits. There was, however, a declaration filed by the inventor during the prosecution of the '155 patent that mentions removable bits. The PTO rejected claims as obvious over Beebe in combination with O’Neill or Topka. The declaration states that in Beebe (the prior art reference), the sleeve has a “wall material thickness of between 0.040 and 0.045. The reason [for] this wall thickness is to be able to quickly remove the bit. As many as 320 bits may be removed and replaced a day.” J.A. 253. The patentee criticizes this design because the thin walls would “shear under even a moderate load.” Id. The patentee further explains that “the present application is a bit holder that is stiffer [due to thickness] and therefore holds the bit in the proper position for heavy operating.” Id. None of this supports the idea that the present invention is limited to a holder with removable bits. The declaration does, however, go on to distinguish the Warren reference because Warren’s bit holder “has a wider notch at the rearward portion and a narrower width at the front face. The present application is the reverse. This difference is material because the narrower rearward portion prevents the clogging of the notch and aids in removal of the bit.” J.A. 254. This is not a clear and unmistakable disclaimer of any bit that is not removable. The fact that the present design of the bit holder might permit or aid in removability of bits does not require that the bits be removable. This is a statement that would support the notion that the inventor contemplated removable bits, but it is a far cry from requiring removable bits.
It is not an object of the invention of the '155 patent to provide removable bits. Removability of the bits is only mentioned *1029 in one of the five disclosed embodiments. It is not described as important, essential, required, or “the present invention.” None of the descriptions of the other embodiments and none of the figures of the other embodiments even hint at removable bits. Respectfully, this patent is directed to bit holders that are removable from bit blocks. The bit, however, does not have to be removable from the bit holder. I would find for the patentee, and not read the removability limitation into the claim.
B. “Mountable in a Bore”
I agree with the majority that the bit must be “mountable in a bore,” but not because this is somehow inherent in the word “bit.” The claims contain a limitation that the bit is “mountable in a first bore through said bit holder.” T55 patent claim 1. This limitation requires that the bit be mountable in a bore.
The majority notes, but does not appear to adopt, the district court’s reasoning that if a bit is “mountable” it has to be “removable.” See J.A. 308 (“[T]he only reason really on this one that I adopted the re-movability is because I think if it’s going to be mountable, it has to be removable.”) Mounting is about attachment, not removal. When one mounts a bit to a bore, one attaches it or fixes it to the bore. A bit that is brazed onto its bore is still mounted in the bore. Likewise, a diamond is mounted in its setting. Removability is not a condition that necessarily follows from mounting.
C. “Cylindrical” shank and bore
The majority also errs in its construction of the “shank” portion of the bit as an “elongate cylindrical object.” There is nothing inherent in the word “shank” that requires a cylindrical shape as opposed to, for example, the frustoconical shape of the accused structures’ carbide bolster (which, the patentee argues, is its shank). The plain and ordinary meaning of shank is “[tjhat part of an instrument, tool, or other thing, which connects the acting part with a handle or other part.” J.A. 437. It is true that one disclosed embodiment — the discussion of Figure 1 of the '155 patent— has a bit with a cylindrical shank. The only time the shank of the bit is ever described at all is in the following sentence of the patent: “Aft of the cylindrical base 24, the tip narrows to a cylindrical shank 25, which, in this embodiment, includes a C-shaped retainer 26 there around and a cylindrical shank portion base 27 defining the rear end of the bit.” '155 patent col. 3 11. 7-10 (emphasis added). That is the only time in the entire patent that the shape of the shank of the bit is ever mentioned. Given that shanks in general can have any shape, this one sentence does not clearly limit the claimed bit to a bit with a cylindrical shank. There is nothing in this discussion that even suggests that the cylindrical shape is important, essential, useful, advantageous, or necessary to the invention.
To be clear, there are other portions of the patent that discuss the cylindrical shank of the bit holder. In fact, claim 1 itself covers a “generally cylindrical bit holder shank.” Id. claim 1. This is not the shank of the bit, nor does the bit shank mate with the bit holder shank such that one would expect them to be similarly shaped. They are completely separate parts.
The majority’s requirement that the shank be cylindrical is intertwined with its conclusion that the bore be cylindrical. Maj. Op. at 1020-21; see Novatek, Inc. v. Sollami Co., No. 2:11-cv-00180, 2013 WL 1831995, at *5 (D.Utah Apr. 30, 2013) (“Because the shank ... [is] ‘in the bore,’ and because the shank is cylindrical, the bore must also be cylindrical.”). Again there is no language anywhere that suggests that *1030 the cylindrical shape given to the disclosed embodiment is important, “the present invention,” or an essential feature. If the plain and ordinary meaning of bore required a cylindrical shape, then there would be no need for the patent to refer to a “cylindrical bore,” as it does at one place in the patent. '155 patent col. 3 1. 64. The very dictionaries relied upon by the majority indicate only that bores are “usually cylindrical.” In short, bores are not required to be cylindrical.
To the extent “bit” is a claim limitation, it is to be given its plain and ordinary meaning, which does not require remova-bility or a cylindrical shank and bore. There is nothing in the record to indicate that the patentee intended to deviate from the plain and ordinary meaning by defining the word “bit,” disavowing its scope, or even suggesting that these three features are critical to the claimed invention. The majority improperly deprives the patentee of the breadth of the claims by reading limitations from particular embodiments in the specification into its construction of “bit.” I would reverse the summary judgment of noninfringement and remand for a jury trial on the disputed issues of fact.